**THE UKASICK LAW FIRM**
4045 Saint Cloud Drive, Suite 100
Loveland, CO 80538
Telephone: (970) 663-3336
Fax: (970) 461-1244
Troy A. Ukasick – CO Bar #22853
troy@ukasicklaw.com

**VANMEVEREN LAW GROUP**
2038 Caribou Drive, Suite 101
Fort Collins, CO 80525
Telephone: (970) 495-9741
Fax: (970) 495-6854
Bryan S. VanMeveren – CO Bar #31538
vanmeverenlaw@frii.com

*Attorneys for Plaintiffs Christopher Clouser and Ana Clouser*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| **CHRISTOPHER CLOUSER** and **ANA CLOUSER**<br><br>Plaintiffs,<br><br>V.<br><br>**SIERRA NEVADA CORPORATION**, a Nevada Corporation, and the **UNITED STATES OF AMERICA**,<br><br>Defendants | No.<br><br>**COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs Christopher Clouser and Ana Clouser, by and through their attorneys of record, Troy A. Ukasick of The Ukasick Law Firm, and Bryan S. VanMeveren of VanMeveren Law Group, and for their Complaint for Damages, allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1. This is a tort action to recover personal injury damages in excess of seventy-five thousand dollars ($75,000), exclusive of costs, interest and attorneys' fees, which lies within the diversity jurisdiction of this Court.

2. Plaintiff Christopher Clouser is an individual currently residing in Weld County, Colorado. At all times relevant and material, Plaintiff Christopher Clouser was a citizen of the United States.

3. Plaintiff Ana Clouser is an individual currently residing in Weld County, Colorado.

4. At all times relevant and material, Defendant Sierra Nevada Corporation, Inc. (hereinafter, "Defendant SNC") is a for-profit Nevada corporation with its principal place of business at 444 Salomon Circle, Sparks, Nevada 89434. Defendant SNC is a defense contractor for the United States of America that performs a large variety of Department of Defense ("DOD") contract missions. Specifically here, Defendant SNC owns and operates U.S. registered and Federal Aviation Administration ("FAA") numbered civilian aircraft, which are used for counter-narcotics aerial surveillance flights in the Caribbean basin and northern coast of South America under the operational control of the United States Southern Command ("USSOUTHCOM") and the Air Force South ("AFSOUTH"), Twelfth Air Force.

5. USSOUTHCOM is a joint military command supporting U.S. national security objectives throughout the Western Hemisphere in cooperation with domestic and international partners, in order to foster security, ensure stability and promote prosperity throughout Central and South America, the Caribbean, and the global community. A primary focus of

USSOUTHCOM is supporting the interdiction of narcotic trafficking through detection and monitoring, information sharing, and partner-nation capacity building.

6. USSOUTHCOM consists of personnel and an Air and Space Operations Center for command and control of air and space capabilities in support of U.S. Military involvement and partnerships across Central America, South America and the Caribbean. The Twelfth Air Force is the U.S. Air Force component of USSOUTHCOM, located at Davis-Monthan Air Force Base in Tucson, Arizona and oversees U.S. Air Force assets. The Twelfth Air Force, as part of USSOUTHCOM, provides joint/combined radar surveillance architecture oversight and supports USSOUTHCOM's Theater Security Cooperation Strategy through counter-narcotic operations.

7. Upon information and belief, Defendant SNC engages in substantial business activities in this district and the State of Colorado and operates, conducts, engages in or carries on a business or business ventures in the State of Colorado and/or has an office or agency in the State of Colorado. Upon information and belief, Defendant SNC has wholly owned subsidiaries, business contacts, employees and subcontractors in the State of Colorado. Accordingly, Defendant SNC is subject to the jurisdiction of this Court.

8. New Frontier Innovations, LLC (hereinafter, "NFI") performs subcontracted missions for DOD contractor Defendant SNC, including, but not limited to, aerial counter-narcotics surveillance flights in the Caribbean Sea and north coast of South America in the area of operation of USSOUTHCOM. NFI provides pilots, sensor operators, training and operational support to operate civilian aircraft utilized in such missions.

9. Defendant the United States of America (hereinafter, "Defendant USA") may be served by delivering a copy of the summons and complaint to the appropriate United States

Attorney. Defendant USA may also be served by sending a copy of the summons and complaint by registered mail to the Attorney General of the United States in Washington, D.C.

10. Defendant USA awarded a DOD contract to Defendant SNC in the United States. Said DOD contract was awarded by Air Force Material Command, under the authority of the Twelfth Air Force, operating in support of USSOUTHCOM located at Davis-Monthan Air Force Base in Tucson, Arizona, to perform aerial counter-narcotics surveillance flights in the Caribbean Sea and north coast of South America in the area of operation of USSOUTHCOM. These contracts are known as Intelligence, Surveillance and Reconnaissance ("ISR") contracts. The DOD contract at issue here was executed, negotiated, awarded, maintained, overseen, controlled, enforced and followed within the United States of America. The contract documents were located within the United States. The mission crew was flight monitored by USSOUTHCOM from within the United States during the subject surveillance flight.

11. At all times relevant and material, Defendant USA was responsible for airworthiness directives, mission implementation and oversight of the DOD contract it awarded to Defendant SNC from within the United States. USSOUTHCOM was the controlling agency within the United States for the DOD contract awarded to Defendant SNC in this case.

12. Defendant SNC entered into a subcontract with NFI to support the contract mission referenced in paragraph 11 above by supplying pilots, sensor operators, training and operational support for the aerial counter-narcotics surveillance flights in the Caribbean Sea and north coast of South America in the area of operation of USSOUTHCOM.

13. This Court has jurisdiction over this action pursuant to the United States Constitution, as the United States of America is party to this suit. U.S. Const. art 3, §2, cl. 1.

14. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because there is complete diversity of citizenship as this case involves an action between citizens of different states and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), excluding interest and costs.

15. All conditions precedent to this filing have been met.

16. Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391(b)(3) and (e), and because the United States of America is a Defendant in this action.

**FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

17. Plaintiffs incorporate by reference paragraphs 1-16 as if fully set forth herein.

18. Upon information and belief, Defendant USA awarded a DOD contract requiring electronic surveillance with aircraft to Defendant SNC. Upon information and belief, this DOD contract required Defendant SNC to fly surveillance flights to monitor and detect aircraft, vessels and persons who are transporting illegal narcotics into the United States or from narcotics growing areas, such as Colombia, Mexico, and other countries bordering the Caribbean basin or Pacific Ocean.

19. Upon information and belief, NFI entered into a subcontract with Defendant SNC for a mission which required NFI to fly surveillance counter-narcotics flights to monitor and detect aircraft, vessels and persons who are illegally transporting narcotics into the United State from places, including, but not limited to Columbia, Mexico, Panama and other countries bordering the Caribbean Sea and the north coast of South America.

20. Plaintiff Christopher Clouser was hired by NFI as a pilot for the mission made a part of the subcontract referenced in paragraph 20 above.

21. Whenever in this Complaint it is alleged that Defendant SNC did any act or thing, it is meant that Defendant SNC's officers, agents, servants, employees, or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of Defendant SNC and/or was done in the normal and routine course and scope of employment of Defendant SNC's officers, agents, servants, employees, or representatives.

22. Whenever in this Complaint it is alleged that Defendant USA did any act or thing, it is meant that Defendant USA's officers, agents, servants, employees, or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of Defendant USA and/or was done in the normal and routine course and scope of employment of Defendant USA's officers, agents, servants, employees, or representatives.

23. Under the terms of the above referenced contract, it is believed that Defendant SNC generally was to provide the aircraft, navigational equipment systems, maintenance, training and basic oversight for the mission.

24. Under the terms of the above referenced contract, it is believed that NFI was to provide pilots, sensor operators, training, mission oversight, mission planning, mission scheduling and operational support and direction for the mission.

25. Upon information and belief, Defendant USA was responsible for properly contracting the mission to a qualified maritime DOD contractor, airworthiness directives, mission oversight and ensuring compliance with the DOD contract, mission plan and overall mission objectives.

26. At all times relevant and material, each of the Defendants was responsible for the safe operation of the mission.

27. At all times relevant and material, and on October 5, 2013, Defendant SNC was performing the DOD contract utilizing a Defendant SNC owned aircraft, a Havilland DHC Bombardier Dash 8, "Prospector" aircraft, bearing US FAA registry tail number N365PH (the "Aircraft"). The Aircraft was modified for this mission by or at the direction of Defendant SNC, was considered experimental and was not authorized to fly under a standard airworthiness certificate.

28. On October 5, 2013, the Aircraft was flying over the Caribbean basin on maritime patrol and near the borders of Colombia and Panama, looking for suspicious illegal narcotics activity. Personnel onboard the Aircraft included two pilots, a mission commander, a mission systems operator, a host nation rider, and a host nation rider escort.

29. On October 5, 2013, somewhere near the Panamanian border in Columbia, the Aircraft ran aground causing serious bodily injury and damages to the two pilots, and killing the four other personnel on board the Aircraft.

30. Plaintiff Christopher Clouser was one of the pilots of the Aircraft on October 5, 2013.

31. Plaintiff Christopher Clouser was employed by NFI at the time of the subject crash. Plaintiff Christopher Clouser was not, and never has been, an employee of Defendant SNC.

32. The other surviving pilot of the Aircraft was an employee of Defendant SNC at the time of the crash on October 5, 2013.

33. The pilot employed by Defendant SNC was not current in the Aircraft, was deficient in mission procedures and should not have been flying the plane at the time of the crash. Defendant SNC's employee and pilot was using the October 5, 2013 actual surveillance flight for currency and training, when such training should have been conducted before an actual operational surveillance mission.

34. Defendant SNC knowingly and willfully provided an unqualified pilot to fly the October 5, 2013 mission Aircraft. Defendant SNC knew beforehand that its pilot had not attended the required training, and had not gained any mission training as a pilot.

35. Defendant SNC knew beforehand that the pilot employed by Defendant SNC was not current in the Aircraft, was deficient in mission specific procedures, should not have been flying the plane at the time of the crash and was using the October 5, 2013 mission as training.

36. Plaintiff Christopher Clouser was not informed or otherwise made aware by Defendant SNC, or anyone, that the pilot employed by Defendant SNC was not current in the Aircraft, was deficient in mission procedures, was not supposed to be flying the plane at the time of the crash, and was using the October 5, 2013 mission as training.

37. Defendant SNC knowingly and willfully withheld their pilot's deficiencies for the aircraft and mission procedures from Plaintiff Christopher Clouser and the rest of the crew.

38. The Enhanced Ground Proximity Warning System of the aircraft was inoperative during the flight.

39. The Enhanced Ground Proximity Warning System was disabled prior to the flight by Defendant SNC or someone under its control. Neither the pilots nor crew were informed that the Enhanced Ground Proximity Warning System was disabled prior to the flight.

40. The inoperative Enhanced Ground Proximity Warning System substantially contributed to the crash.

41. Defendant SNC failed to provide its employee pilot with an operational iPad and antennae puck for the mishap flight.

42. Defendant SNC'S employee pilot failed to inform Plaintiff Christopher Clouser that he was not equipped with an operational iPad until after entering the work area and asking to use Plaintiff Clouser's iPad.

43. Defendant SNC was responsible for properly equipping the Aircraft with essential technology systems, navigational equipment and redundancies required for the safe operation of the mission and for properly training the pilots and crew.

44. Defendant SNC failed to properly equip the Aircraft with essential technology, navigation equipment and redundancies required for the safe operation of the mission and failed to properly train the pilots and crew.

45. Defendant SNC was responsible for maintenance of the Aircraft and for preparing the Aircraft for the mission.

46. Defendant SNC failed to properly maintain the Aircraft and failed to properly prepare the Aircraft for the mission.

47. The crash was caused by ineffective communication among the pilots and crew, an inoperative and disabled Enhanced Ground Proximity Warning System, improper airplane maintenance, a pilot employed by Defendant SNC who was allowed to fly the plane by Defendant SNC but who was not current in the Aircraft or trained in the mission, insufficient and inadequate equipment and lack of contractual and operational oversight resulting from

inappropriate, insufficient, inadequate and deficient training on mission operations and terrain avoidance responsibilities on the part of Defendants.

48. Defendant SNC withheld critical safety of flight information that prevented Plaintiff Christopher Clouser from performing his duties. Critical flight safety information regarding aircraft airworthiness, crew qualifications, crew experience and proper training would have provided Plaintiff Christopher Clouser critical information that would have enabled him to make accurate and timely decisions that would have prevented the crash.

49. Defendants knowingly and willfully authorized the Aircraft for flight on October 5, 2013, when the aircraft was not airworthy in accordance with FAA regulations, the Manufacturer's Operational Manual, and the FAA approved Minimum Equipment List.

50. Defendant SNC concealed ongoing maintenance problems with the aircraft that, if resolved or revealed to Plaintiff Christopher Clouser, would have prevented the crash.

51. Defendant SNC knowingly and willfully entered into a contract with Defendant USA in which it had no prior experience for services it was required to provide.

52. Defendant SNC knowingly and willfully allowed two unqualified, unprepared and untrained sensor operators to be a part of the crew in the Aircraft on the night of October 5, 2013.

53. Defendant SNC repeatedly failed to provide appropriate training and/or Standard Operating Procedures for the mission and Aircraft.

54. Defendant SNC neglected to provide a method and basis for aborting or cancelling a mission, a process necessitated by the unusual equipment configurations and equipment limitations of the Aircraft.

55. Defendant SNC neglected to provide appropriate training despite knowing that the crew and maintenance members had never performed this type of mission.

56. Defendant SNC knowingly and willfully neglected to adhere to Part 91 of the Federal Aviation Regulations.

57. Defendants knowingly and willfully neglected to ensure mission equipment installation and modifications to the aircraft would not interfere with critical safety of flight equipment integral to the Aircraft.

58. Defendants failed to ensure the crews adhered to proper, standard and accepted practices for Maritime Operations.

59. Defendants are vicariously liable for the actions of their employees, former employees and agents.

**COUNT ONE**
**(Negligence against all Defendants)**

60. Plaintiffs incorporate by reference paragraphs 1-59 as if fully set forth herein.

61. Defendants were responsible for the flight and the safety of all personnel on board the Aircraft and had a duty to provide appropriate navigational equipment, training and oversight of the mission.

62. Defendants had a duty to provide for the safe operation of the mission.

63. Defendants had a duty to properly maintain the Aircraft and the systems on board the Aircraft.

64. Defendants breached their duties to Plaintiffs in many ways, including, but not limited to the following:

a. Failing to keep the Aircraft from flying over land during the mission;

b. Failing to maintain the Aircraft over water during the mission;

c. Failing to provide proper and appropriate navigational equipment in the Aircraft;

d. Failing to provide proper and appropriate training and supervision of mission employees, pilots and crew;

e. Failing to provide proper and appropriate oversight of the mission;

f. Failing to provide proper and appropriate maintenance of the Aircraft and the systems on board the Aircraft and reasonably inspect the Aircraft for safety and/or security hazards or dangers;

g. Utilizing a pilot who lacked experience for the mission;

h. Failing to reasonably and adequately screen pilots for flight-ready status;

i. Utilizing a pilot who was not current in the Aircraft;

j. Failing to advise Plaintiff Chris Clouser that his co-pilot lacked experience for the mission and was not current in the Aircraft;

k. Failing to retain and hire an appropriately trained and experienced pilot and crew with the expertise, knowledge and training necessary to operate the Aircraft in its modified and experimental configuration;

l. Failing to properly and safely maintain the Aircraft;

m. Unreasonably allowing the Aircraft to fly the mission with inoperative warning systems and safety devices;

n. Failing to properly and safely provide and maintain known redundant safety devices and terrain proximity warnings devices;

o. Knowingly and purposely disabling the safety devices and terrain proximity warning devices;

p. Failing to advise Plaintiff Chris Clouser that the safety devices and terrain proximity warning device were knowingly and purposely disabled;

q. Failing to provide an appropriate and effective mode of communication between the crew and pilots and others during the mission;

r. Failing to provide proper, adequate and effective operational, contractual and mission critical oversight;

s. Failing to develop, institute, and enforce reasonable policies, practices, procedures, and guidelines for the mission (Standard Operation Procedures);

t. Failing to develop, institute, and enforce reasonable policies, practices, procedures, and guidelines for maintaining the Aircraft in a reasonably safe manner; and

u. Failing to develop, institute, and enforce reasonable policies, practices, procedures, and guidelines for the hiring, training, supervision and retention of Defendants' employees and/or contractors.

65. Defendants' collective actions, omissions, and failures as more fully described herein, constitute negligence.

66. As a result of the negligent acts and/or omissions of Defendants, the Aircraft crash occurred, and as a result, Plaintiff Christopher Clouser has suffered, and continues to suffer, serious bodily injury, fear, anxiety, mental anguish, pain and suffering, emotional distress, loss of enjoyment of life, loss of income, impairment of earning capacity, medical expenses and various other economic and non-economic damages.

67. As a result of the negligent acts and/or omissions of Defendants and the resulting injuries and damages to Plaintiff Christopher Clouser, Plaintiff Ana Clouser has suffered, and continues to suffer special damages including, but not limited to, loss of consortium, and loss of future economic support.

68. As a result of the negligent acts/or omissions of Defendants and the resulting injuries and damages, Plaintiffs are entitled to damages.

**COUNT TWO**
**(FTCA Claims against Defendant United States)**

69. Plaintiffs incorporate by reference paragraphs 1-68 as if fully set forth herein.

70. Defendant USA had a duty to provide a safe contracted mission flight and was responsible for the safety of all personnel on board the Aircraft.

71. Defendant USA had a duty to contract this mission to an appropriately qualified DOD contractor and ensure compliance with existing laws and requirements regarding essential terms and provisions of said contract.

72. Defendant USA had a duty to provide the contracted mission flight with appropriate, proper and adequately credentialed and trained pilots and crew and oversight of same.

73. Defendant USA had a duty to provide safe and appropriate navigational equipment, systems and redundancies onboard the contracted mission Aircraft.

74. Defendant USA had a duty to assess and approve the airworthiness of the contracted mission Aircraft pursuant to DOD directive and assure compliance with airworthiness standards, policies and requirements.

75. Defendant USA had a duty to oversee and ensure that contracted mission personnel were properly and adequately trained and supervised.

76. Defendant USA had a duty to manage and oversee the contracted mission.

77. Defendant USA had a duty to mandate and/or enforce certain requirements and provisions of the DOD contract pursuant to DOD directives and applicable laws and regulations.

78. Defendant United States breached its duty to Plaintiffs in many ways, including, but not limited to, the following negligent, careless and/or reckless acts or omissions:

a. Failure to provide a safe contracted mission flight;

b. Failure to contract this mission flight to an appropriate DOD contractor with maritime experience and ensure compliance with existing laws, directives and requirements regarding essential terms and provisions of said contract;

c. Failure to provide the contracted mission flight with appropriate, proper and adequately credentialed and trained pilots and crew and oversight of same;

d. Failure to provide safe and appropriate navigational equipment, systems and redundancies onboard the contracted mission Aircraft;

e. Failure to properly assess and approve the airworthiness of the contracted mission Aircraft pursuant to DOD directive or to ensure that the subject aircraft obtained and maintained compliance with the appropriate Air Worthiness directives and certification;

f. Failure to properly oversee that contracted mission flight personnel were properly and adequately trained and supervised;

g. Failure to properly manage and oversee the contracted mission flight;

h. Failure to mandate and/or enforce certain reasonable requirements and provisions upon the DOD contracted mission flight pursuant to DOD directives and applicable laws and regulations regarding safety;

i. Failure to ensure that Defendant SNC operated the aircraft in accordance with Parts 91(General Operating and Flight Rules) and 125 (Certification and Operations) of Federal Aviation Regulations (FAR);

j. Failure to mandate and/or enforce in its DOD contract that Defendant SNC comply with applicable maintenance standards set forth in Federal Aviation Regulations; and

o. Failure to ensure Standard Operational Procedures were established and implemented to ensure safety of flight operation for the pilots and crew.

79. As a result of the negligent acts and/or omissions of Defendant USA the Aircraft crash occurred, and as a result, Plaintiff Christopher Clouser has suffered, and continues to suffer, serious bodily injury, fear, anxiety, mental anguish, pain and suffering, emotional distress, loss of enjoyment of life, loss of income, impairment of earning capacity, medical expenses and various other economic and non-economic damages.

80. As a result of the negligent acts and/or omissions of Defendant USA and the resulting injuries and damages to Plaintiff Christopher Clouser, Plaintiff Ana Clouser has suffered, and continues to suffer special damages including, but not limited to, loss of consortium, and loss of future economic support.

81. As a result of the acts/or omissions of Defendant USA and the resulting injuries and damages, Plaintiffs are entitled to damages.

## JURY DEMAND

82. Plaintiffs demand a jury trial and tender the appropriate fee with this Complaint.

## PRAYER

83. For these reasons, Plaintiffs ask that the Court issue a citation for the Defendants to appear and answer, and that the Plaintiffs be awarded a judgment against Defendants and in favor of the Plaintiffs for the following:

a. For compensatory damages in the amount to be proven at trial;

b. For general damages in an amount to be proven at trial;

c. For punitive damages in an amount to be proven at trial;

d. For pre and post judgment interest at the maximum amount provided by law; and

e. For such other relief as deemed just and appropriate by the Court.

DATED this 3rd day of October, 2015.

**THE UKASICK LAW FIRM**

By: /s/ Troy A. Ukasick
Troy A. Ukasick - #22853
Attorney for Plaintiffs
4045 Saint Cloud Drive, Suite 100
Loveland, CO 80538

**VANMEVEREN LAW GROUP**

By: /s/ Bryan S. VanMeveren
Bryan S. VanMeveren – #31538
Attorney for Plaintiffs
2038 Caribou Drive, Suite 101
Fort Collins, CO 80525

Plaintiffs Address:
2630 Rosybill Lane
Johnstown, CO 80534